UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-1000-HEA |
| | ) | |
| DEPARTMENT OF JUSTICE SERVICES, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the filing of a second amended complaint by self-represented plaintiff Alexander Howell, a pretrial detainee currently housed at the St. Louis County Justice Center. ECF No. 11. The Court previously granted plaintiff *in forma pauperis status*. ECF No. 5. The Court has carefully reviewed the second amended complaint and, for the reasons discussed below, the Court will dismiss this action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that

1

requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

2

## The Complaint

Self-represented plaintiff Alexander Howell filed this action on August 10, 2021 on a Court-provided complaint form pursuant to 42 U.S.C. § 1983.[1]  The St. Louis County Department of Justice Services ("SLCDJS") was named as the sole defendant. Plaintiff alleged she was being deprived of her constitutional rights for five reasons:

> (1) the lack of providing the "safety" and "welfare" of all people, (2) the concept of the environment is "structured to provide a positive behavior management system," but prevents the fulfillment of another right, (3) some physical aspects that are grossly inadequate, (4) and the most efficient way of creating conditions and circumstances of lockdown, [and] (5) threats of retaliation, non[-]life threatening and then later death, for grievance process and the initiation of filing a civil suit.

ECF No. 1 at 3.

Plaintiff further alleged that "around the dates of March 28 to March 11" she was denied access to the law library, and "around May" an unidentified officer harassed her by calling her "it," "boy," thug," and "that." Plaintiff stated other officers threatened her for filing grievances, and on July 20, 2021 her "life was threatened" by a sergeant who placed her "under imminent danger." Plaintiff further complained she was being housed in the "hole" with quarantining inmates "where there is mold and blood on the walls." Plaintiff stated her isolation from the general population was made without reason or notice. For relief, plaintiff sought monetary damages in the amount of 2.5 million dollars, and for the Court to "drop and/or lessen [her] charges."

On August 19, 2021, the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915 and determined it was subject to dismissal. ECF No. 5. The Court found her claims against the

---

[1] Plaintiff states she is a "male to female identifying transgender." ECF No. 11 at 4. The Court will, therefore, use the pronouns "she" and "her" when referring to Plaintiff.

sole defendant, SLCDJS, were legally frivolous because it was not a suable entity under § 1983. The Court further noted plaintiff failed to name as defendants the individuals who allegedly harassed and threatened her, denied her access to the law library, or who placed her in unsanitary living conditions. Because plaintiff is a self-represented litigant, the Court directed her to file an amended complaint to cure her pleading deficiencies. Plaintiff was provided with detailed instructions on how to properly submit her amended complaint.

### The Amended Complaint

On August 27, 2021, plaintiff filed an amended complaint on a Court-provided form. ECF No. 6. Plaintiff named eighteen defendants: (1) Department of Justice Services; (2) M. Lee, Officer; (3) L. Johnson, Officer; (4) J. Showmaker, Sergeant; (5) Tim Ishman, Major; (6) L. Ford, Officer; (7) Jones, 8th Floor Officer; (8) M. Winston, Officer; (9) T. Rodgers, Phone Tech; (10) May Stearn, Case Manager; (11) M. Wolf, Sergeant; (12) E. Porter, Officer; (13) Patrick, Officer; (14) A. McKinney, PREA Coordinator; (15) Doug Burris, Director; (16) A. Elrod, 8th Floor Officer; (17) Wright, 8th Floor Sergeant; and (18) S. Maddex, Sergeant. All defendants were alleged to be employees of the SLCDJS, except for Rodgers, who was alleged to be an employee of Securus Technologies. Plaintiff indicated all defendants were being sued in their official capacities, except for L. Johnson, who was sued in his official and individual capacities.

Similar to the original complaint, plaintiff first listed several general reasons for why her constitutional rights were allegedly violated:

> (1) the lack of providing "safety" and "welfare" of all people, (2) lacking the concept of the environment is "structured" to provide a positive behavior management system by fulfilling inmates rights, but instead prevents the fulfillment of another right; (3) some physical aspects of the facility that [are] grossly inadequate; (4) the most efficient way of creating conditions of lockdown that make self improvement possible and degeneration unlikely; (5) threats of retaliation, non

4

life threatening and then later death, for grievance process and the initiation of filing
a civil suit; (6) gross staff conduct and communication; (7) denial of access to courts
by legal library and correspondence; [and] (8) inadequate medical attention.

ECF No. 6 at 6-7.

Plaintiff then proceeded to allege various grievances against the defendants. Her statement
of claim was presented as a disjointed, stream of consciousness narrative concerning multiple
unrelated topics mostly lacking factual support. Plaintiff stated she had been "denied proper legal
assistance for the law library by May Stearn, Sergeant M. Wolf, and Sergeant J. Showmaker" and
harassed by Officer L. Johnson for her feminine pronouns. Plaintiff complained the conduct of
"multiple officers" was "gross" because M. Lee "comes to work or get[s] high on the clock,"
"Sergeant Wolf makes racist remarks," and Officers Paige and Porter "gave [her] another inmates
paperwork." Plaintiff asserted staff shortages at the SLCDJS "led to deprivation of rec time and
health form turn-ins by medicine staff."

Plaintiff alleged Officers Winston, Lee, and Elrod shared confidential information with
inmates, Major Ishmon transferred her to a cell with bed bugs and blood on the wall, and she was
housed in a pod with moldy showers and quarantining inmates. Plaintiff complained Rodgers
"could not fix the phones" which caused her and other inmates from making calls for eighteen
days. Plaintiff further stated she was punished by Officer Patrick "for expressing [her]self to an
inmate" and A. McKinney prevented her from being assigned to the general population.

Plaintiff stated she wrote a letter to the Director of SLCDJS, who "refuse[d] to come speak
to [her]," and, instead, "sen[t] other administrative personnel to fix a problem that doesn't get
fixed." She alleged Sergeant Maddex "threatened to retaliate against [her] by stating he 'kill'
behind his job and family" and she "better focus on [her] civil suit." She asserted Officers Jones

and Lee threatened to retaliate against her for writing grievances. Lastly, plaintiff complained of a bug infestation in the recreation yard, issues with "food consistency," and a lack of "audio on intercoms or cameras."

Plaintiff described her injuries as migraines, anxiety, and depression. Plaintiff sought monetary damages in the amount of five million dollars for "inequality, [the] due process clause, and deprivation of liberty."

On September 17, 2021, the Court reviewed the amended complaint pursuant to 28 U.S.C. § 1915, and determined it was again subject to dismissal. ECF No. 10. The Court explained her official capacity claims were subject to dismissal because she failed to sufficiently allege any facts against St. Louis County to support the proposition that it has an unconstitutional policy or custom, or that it has been deliberately indifferent in failing to train or supervise its employees. The Court found her individual capacity claim against defendant Johnson for harassment was subject to dismissal because she did not provide any factual support and, as such, her allegation amounted to a legal conclusion that was not entitled to the presumption of truth. The Court further determined her amended complaint was subject to dismissal because she impermissibly advanced multiple claims against multiple defendants concerning unrelated events that occurred over several months, and failed to present her allegations in separate, numbered paragraphs setting forth a short and plain statement of the facts.

Although plaintiff's amended complaint was subject to dismissal, the Court provided her with one final opportunity to cure the pleading deficiencies and directed her to file a second amended complaint.

**The Second Amended Complaint**

On September 27, 2021, plaintiff filed a second amended complaint on a Court-provided form pursuant to 42 U.S.C. § 1983. ECF No. 11. Plaintiff names seventeen defendants: (1) Doug Burris, Director; (2) May Stearn, Case Manager; (3) Mildred Winston, Officer; (4) M. Lee, Officer; (5) S. Maddex, Sergeant; (6) Tim Ishmon, Major; (7) Amy McKinney, PREA Coordinator; (8) A. Elrod, Officer; (9) Wright, Sergeant; (10) M. Wolf, Sergeant; (11) L. Patrick, Officer; (12) Ms. Nickie, Nurse; (13) L. Ford, Officer; (14) Roland, First Shift Lieutenant; (15) Jones, Officer; (16) J. Showmaker, Sergeant; and (17) L. Johnson, Officer.

Plaintiff indicates defendants Burris, Stearn, and Ishmon are being sued in both their official and individual capacities, and defendants Winston, Lee, Maddex, McKinney, Elrod, Wright, Wolf, and Patrick are sued in their individual capacities only. Plaintiff does not specify what capacity she intends to sue defendants Nickie, Ford, Roland, Jones, Showmaker, or Johnson.

Plaintiff first alleges her conditions of confinement are "incompatible with the 'Goals and Philosophy' of the Saint Louis County Department of Justice Services," which requires "secure custody, safety, health and welfare" as well as "security, supervision, and assistance" to inmates. She lists thirteen section titles of the inmate handbook, which she believes "are not followed, inadequate to update or existence [sic], or is deliberately indifferent in the training of officers." The section headers she lists include: Department Goals and Philosophy, General Housekeeping, Inmate Rights and Privileges, Grievance Procedure, Grievance Appeal Process, Staff Sexual Misconduct, Minor Rule Violation, Major Rule Violation, Disciplinary Hearings, Mental Health Services, Appointments, Institutional Programs and Services, and Legal Library. Plaintiff asserts there are "official and unofficial customs in these sections" of the inmate handbook "that has been

described by the negligence of the officers, lack of training and supervision, and deliberate indifference." She does not provide any information as to what each section specifically states, nor does she explain how they are allegedly unconstitutional.

Plaintiff then alleges various claims against the named defendants. Plaintiff asserts Lee, Winston and Johnson verbally harassed and sexually assaulted her for being transgender by calling her names, such as "it," "thing," "that," "sir," "boy," and "shem," despite being "directed by their supervisor to remain professional." Lee, Ford, and Jones threatened her for filing grievances and denied her request for grievance forms by telling her: "you doing too much," "ain't nobody finna [sic] keep giving you damn grievances," and "I'm not giving you shit. Ask someone else." Ford and Roland left her in a two foot by two foot visiting booth for two hours. Maddex threatened to kill her due to "inmate rumors" and told her he "kill behind his family and job." Lee, Elrod, and Winston "share[] confidential info[rmation] with inmates about other inmates." Ishmon placed her in a housing unit with moldy showers, bug infestation issues, and quarantining inmates. Defendant Patrick "punished [her] for expressing [her]self to another inmate." Wolf and Showmaker deprived her of recreation privileges "using shortness of staff as an excuse." Stearn and Ishmon conducted disciplinary hearings without a committee and put her on an eighteen day phone restriction violating her "right to correspondence" with a public defender. Lee reports to work "impaired off marijuana," which affects her ability to do her job. Wright and Wolf "use[] the legal library as a priveledge [sic]." McKinney prevents plaintiff from being housed in general population without providing a reason. Burris refuses to speak to her or correspond with her via mail. Plaintiff states she will "never feel human until [her] penis is removed," but Nurse Nickie told her she is unable "to do nothing else."

8

Plaintiff alleges her constitutional rights have been violated due to intentional infliction of emotional distress, the defendants' discussion of confidential information with inmates, denial of access to the courts, inadequate medical care, cruel and unusual punishment for isolating her as a transgender female, lack of due process in disciplinary hearings, denial of access to an attorney, failure to implement training and supervisory measures to prevent unnecessary conditions of lockdown, failure to provide a positive behavior management system due to inefficient training and supervision, threats of retaliation, shortness of staff, leaving her in a visitor's booth for two hours, and not following specific provisions within the inmate handbook.

Plaintiff describes her injuries as "anxiety, depression, chronic migraines, mental impairment, impulses of castration to the penis, [and] gender dysphoria." For relief, plaintiff seeks "the dismissal of [her] county charges or time served" and $4 million in damages for pain, suffering, and emotional distress.

## Discussion

After careful review of plaintiff's second amended complaint, the Court finds her claims against defendants must be dismissed. Despite being provided with two opportunities to cure her pleading deficiencies, plaintiff has failed to do so. Plaintiff's second amended complaint fails to state any plausible claims for relief because it contains nothing more than disorganized, repetitive, and conclusory statements that plaintiff's federally-protected rights were violated.

### A. Official Capacity Claims

Plaintiff brings this action against defendants Burris, Stearn, and Ishmon in their official capacities. Plaintiff does not specify what capacity she intends to sue defendants Nickie, Ford, Roland, Jones, Showmaker, or Johnson. When a plaintiff's complaint does not specify whether a

defendant is being sued in his individual or official capacity, the court will interpret the claim(s) against that defendant as including only official capacity claims. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). This pleading requirement is strictly enforced by the Eighth Circuit. *See Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997).

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against a sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, all defendants are alleged to be employees of the St. Louis County Justice Center. The St. Louis County Justice Center, however, is a department of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of police department because it was not a juridical entity); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Thus, plaintiff's official capacity claim against defendants as

10

employees of the St. Louis County Justice Center, must be dismissed.

To the extent St. Louis County employs the defendants, plaintiff's complaint fails to state a municipal liability claim. A local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a county cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . .  cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its

11

employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, with regard to policy, plaintiff alleges the "Goals and Philosophy" of the St. Louis County Justice Center is to promote "secure custody, safety, health and welfare" as well as "security, supervision, and assistance" to inmates, but certain defendants have failed to follow the County's goals. This allegation is the antithesis of showing that St. Louis County's policies are unconstitutional.

12

Later in the complaint, however, plaintiff lists thirteen section headers of the inmate handbook, such as "General Housekeeping," "Grievance Procedure," and "Minor Rule Violation," and states they are "inadequate," need to be updated, and are "deliberately indifferent in the training of officers." The Court finds these allegations to be entirely conclusory. Other than providing the title of thirteen policies within the inmate handbook, plaintiff does not describe the content of the individual policies. Plaintiff also fails to demonstrate that the inadequacies of such policies, if any, were a product of deliberate or conscious choice by the County policymakers. *See Monroe v. Precythe*, No. 4:19-CV-00392-JAR, 2020 WL 2322922, at *10 (E.D. Mo. May 11, 2020) (merely pointing to a policy is not enough to state a municipal liability claim). While a *pro se* pleading is to be liberally construed, it still must allege specific facts which, if proven true, would entitle the plaintiff to some legal relief against the named defendant(s) under some cognizable legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). "Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

As to an unofficial custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis County employees, much less that St. Louis County officials were deliberately indifferent to or tacitly authorized particular misconduct. Her allegations, rather than indicating widespread misconduct, focus on things that have happened to her personally or are attributed to the "negligence" of defendants, which are insufficient to show they were the result of a custom on the part of St. Louis County. *See Moyle v. Anderson*, 571 F.3d 814, 819 (8th Cir. 2009) ("A showing of simple or even heightened negligence will not suffice."); *Mosley v. Reeves*, 99 F. Supp. 2d 1048, 1054 (E.D. Mo.

13

Jan. 21, 2000) ("an allegation of mere negligence is insufficient to demonstrate an unconstitutional policy or custom").

Likewise, plaintiff has not shown a "pattern of similar constitutional violations by untrained employees," which is necessary to demonstrate a failure to train. First, as noted above, her allegations relate to her own experience, and do not show the existence of a pattern of conduct at the St. Louis County Justice Center. Second, plaintiff asserts in a conclusory fashion that some defendants have not been trained properly. Plaintiff provides no facts showing that St. Louis County had notice that its training procedures were inadequate, were likely to result in a constitutional violation, or that any purported failure to train actually caused plaintiff's alleged injuries. Notably, in direct contrast to her allegations, plaintiff states in her complaint that defendant officers "were directed by their supervisors to remain professional," but it was the individual defendants who refused to follow directions. In short, plaintiff has failed to properly allege that St. Louis County was the "moving force" behind her constitutional deprivations. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation").

Because plaintiff has not alleged sufficient, non-conclusory facts showing an unconstitutional policy, custom, or failure to train on the part of St. Louis County, she has not stated a municipal liability claim. Therefore, plaintiff's § 1983 action against defendants in their official capacities must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

14

### B. Individual Capacity Claims

Out of the seventeen named defendants, plaintiff only brings individual capacity claims against Winston, Lee, Maddex, McKinney, Elrod, Wright, Wolf, Patrick, Burris, Stearn, and Ishmon. The Court notes that in its Opinion, Memorandum, and Orders, dated August 19, 2021 and September 17, 2021, plaintiff was instructed to "specify whether she intends to sue each defendant in his or her individual capacity, official capacity, or both." ECF No. 5 at 5; ECF No. 10 at 11. As such, the Court will only address individual capacity claims as to these specific defendants.

At the time of the events giving rise to his complaint, plaintiff was a pretrial detainee at the St. Louis County Justice Center. Plaintiff, as a pretrial detainee, has the right to be free of cruel and unusual punishment. Although "the Eighth Amendment has no application" until there has been a "formal adjudication of guilt," the Fourteenth Amendment gives pretrial detainees rights that are at least as great as the Eighth Amendment protections available to convicted prisoners. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Therefore, the Court's analysis regarding the constitutional duties imposed by the Eighth Amendment equally applies to plaintiff's time as a pretrial detainee under the Fourteenth Amendment.

As a preliminary matter, plaintiff's second amended complaint is deficient because she cannot use a single action to bring unrelated claims against different defendants. Plaintiff was explicitly directed in this Court's September 17, 2021 Opinion, Memorandum and Order that Rule 20(a)(2) of the Federal Rules of Civil Procedure requires her to "only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other." ECF No. 10 at 9-10, 12. For example, plaintiff's claim for harassment based on her gender pronouns is

15

unrelated to her due process claims, both of which are unrelated to her claim for access to the courts. "Unrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). For this reason, plaintiff's complaint should be dismissed, however, the Court will proceed to address each unrelated claim individually.

To the extent plaintiff is alleging defendants violated her constitutional rights by not following the "Goals and Philosophy" of the institution or failed to follow a provision within the inmate handbook, such a claim is not actionable under § 1983. An inmate has a liberty interest in the nature of her confinement, but not an interest in the procedures by which the state believes it can best determine how she should be confined. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996)). "[T]here is no constitutional liberty interest in having . . . prison officials follow prison regulations." *Phillip v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy*, 100 F.3d at 643). "Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, 'not an interest in the procedures by which the state believes it can best determine how he should be confined.'" *Id.* (citing *Kennedy*, 100 F. 3d at 643). As such, to the extent plaintiff asserts a constitutional rights deprivation based upon a defendant's failure to generally follow the Jail's "Goals and Philosophy" or certain sections of the inmate handbook, such an allegation does not state a claim upon which relief can be granted.

Plaintiff alleges defendants Lee and Winston verbally harassed and sexual assaulted her for being transgender by calling her "it," "thing," "that," "sir," "boy," and "shem." She further alleges defendant Maddex threatened to kill her due to "inmate rumors" and told her he "kill behind his family and job." Mere verbal threats or name calling made by a state actor do not constitute a

16

§ 1983 claim. *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"); *Burton v. Livingston*, 791 F.2d 97, 99-100 (8th Cir. 1986) (mere words, without more, do not invade a federally protected right; "rough language" resulting only in hurt feelings is not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985) (verbal threats and name calling are not actionable under § 1983); *Robison v. Sanderson*, Case No. 4:19-CV-01182-AGF, 2019 WL 6115198, at *4 (E.D. Mo. Nov. 18, 2019), *appeal dismissed*, No. 20-1628, 2020 WL 5641107 (8th Cir. June 1, 2020) (rude statements and sexual slurs due to defendant's purported dislike of transgender inmate did not rise to a constitutional violation); *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (allegations that officers threatened to kill inmate not cognizable under § 1983). Therefore, the Court finds that the alleged verbal comments by defendants Lee, Winston, and Maddex towards plaintiff, while wholly unprofessional, do not state a constitutional violation and must be dismissed.

Plaintiff alleges defendant Lee has threatened her for filing grievances and denied her requests for grievance forms by making the following statements: "you doing too much," "ain't nobody finna [sic] keep giving you damn grievances," and "I'm not giving you shit. Ask someone else." First, a grievance procedure does not confer upon plaintiff a substantive right. "In the context of a state prison system, an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. July 18, 1986). "If the state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim." *Id. See also Hale v. Cooper*, Case No. 1:12-CV-188 SNLJ, 2013 WL 170735, at *2 (E.D. Mo. Jan. 16, 2013) ("refusal to provide plaintiff with a grievance form does not state a claim for relief").

Second, plaintiff asserts a conclusory allegation of being threatened for filing grievances. She provides no facts as to how she was threatened or retaliated against. Such claims, without more, do not rise to the level of a constitutional violation and fail to state a claim or cause of action. As noted above, legal conclusions and threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements are not entitled to the assumption of truth. *Barton*, 820 F.3d at 964.

Plaintiff further alleges she "began writing letters to the director," defendant Burris, but he "refused to speak to [her] or correspond by mail, and instead sent other administrative staff to fix these problems[.]" Plaintiff does not add any further facts to support this allegation, or to establish that Burris's actions resulted in plaintiff's constitutional rights being violated. *Martin*, 780 F.2d at 1338 (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Burris's position as the Director is not sufficient, in and of itself, to establish liability. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995) (respondeat superior theory inapplicable in § 1983 suits); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). Moreover, a failure to process an inmate's grievances, without more, is not actionable under § 1983. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As such, plaintiff's allegations against defendant Burris for the manner in which he responded to her letters fails to state a claim and must be dismissed.

Plaintiff alleges defendant Wolf deprived her of recreation privileges using shortness of staff as an excuse. The Eighth Amendment may be violated if a prisoner can show that prison

officials were deliberately indifferent to his or her exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992). In determining whether an inmate has been deprived of adequate exercise, "courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." *Id.* at 449. A limitation of out-of-cell exercise, however, does not necessarily violate the constitution. *See id.* (stating that a limitation of three hours per week did not amount to a constitutional violation); and *Wishon*, 978 F.2d at 449 (determining that 45 minutes of out-of-cell recreation a week did not violate constitution). Here, plaintiff provides no facts regarding how she was deprived of recreation, when she was alleged denied, or how much recreation she is missing every week. Thus, plaintiff's conclusory allegation is insufficient to demonstrate that prison officials have been deliberately indifferent to her exercise needs. Therefore, this allegation fails to state a claim.

Plaintiff alleges defendant McKinney prevented her from being housed in general population without providing her with a reason. To state a claim under § 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Notably, the Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, by itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). *See also Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). This is so even if the placement to segregation is *without* cause. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.

2003). To establish a conditions of confinement claim, an inmate must demonstrate (1) the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832).

Here, plaintiff has not provided any facts tending to show that her placement in administrative segregation created an atypical and significant hardship. For example, she has not shown how long she was in segregation, or whether other rights or privileges were curtailed by placement in segregation. While plaintiff alleges that she was denied recreation time, she attributed it to staff shortages, not her confinement status. Furthermore, while she alleges a medical indifference claim against Nurse Nickie, in her official capacity, she does not attribute any lack of medical assistance to her placement in segregation. Therefore, this allegation fails to state a claim.

Plaintiff alleges defendants Lee, Elrod, and Winston "share[] confidential info with inmates about other inmates." She does not provide any additional factual allegations, such as what kind of information was shared, whether it included information about her, or how their actions injured her personally. There is no constitutional violation where an inmate cannot show she suffered from an injury or adverse health consequence. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995). Moreover, to the extent she intends to bring a claim on behalf of other inmates, such an attempt is

impermissible. A person must be litigating an interest personal to herself. *See Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (stating that non-lawyers may only represent themselves because "an individual may appear in the federal courts only *pro se* or through counsel"). This claim must, therefore, be dismissed.

Plaintiff alleges defendants Wright and Wolf use "the legal library as a priv[ile]ge," and defendants Stearn and Ishmon failed to remove her 18-day phone restriction which she claims deprived her from speaking with a public defender. Plaintiff does not, however, state she was personally denied access to the law library or was unable to assert a legal claim in court. The Eighth Circuit has recognized that, when bringing an access to courts claim, it is insufficient to merely allege a denial of access to a law library or other resources, even if the denial is systemic. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Instead, plaintiff must plead that the lack of the library or other resource deprived her of some specific opportunity to defend herself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights. *Id.* Speculation that injuries might occur or could have occurred is insufficient. *See Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008) ("[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the inmate's] access to filing a complaint, or caused a filed complaint to be deficient, [the inmate's] alleged injuries are merely speculative"). *See also See Coe v. Dysinger*, Case No. 1:20-CV-69 DDN, 2020 WL 3791536, at *10 (E.D. Mo. July 7, 2020), *aff'd*, 2020 WL 8262231 (8th Cir. 2020) (lack of access to a phone is not a condition which denies an inmate "of the minimal civilized measure of life's necessities"). Because plaintiff fails to allege that she suffered actual prejudice with respect to contemplated or existing litigation, these claims

must be dismissed.

Plaintiff alleges defendants Stearn and Ishmon "use[] only one person to conduct a disciplinary hearing instead of a committee." Besides being conclusory, this claim fails because in order to demonstrate a due process violation, plaintiff must allege that she "was deprived of life, liberty, or property." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to properly allege a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"); *Monroe v. Precythe*, No. 4:19-CV-00392-JAR, 2020 WL 2322922, at *16 (E.D. Mo. May 11, 2020) (plaintiff must first show the existence of a constitutionally protected liberty interest, before the Court is required to reach the question of what process is due). Here, plaintiff limits her assertion to a general complaint about the way disciplinary hearings are conducted; she does not allege she was actually subject to a disciplinary hearing or deprived of a liberty interest. This claim must, therefore, be dismissed.

Plaintiff alleges defendant Ishmon "houses [her] and other inmates in [un]sanitary housing units with moldy showers and quarantining inmates as a punishment; also with a bug infestation issue." In order to establish an unlawful conditions of confinement claim in violation of the Eighth Amendment, a plaintiff must allege she has been subjected to "extreme" deprivations and been denied "minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Howard v. Adkinson*, 887 F.2d 134, 137 (8th Cir. 1989); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The focus in a "conditions of confinement" case often falls on the length of exposure to the purported unsanitary conditions and the level of alleged filthiness the inmate was supposedly exposed to. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003);

22

*Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (length of time required for conditions to be unconstitutional decreases as level of filthiness increases). Here, plaintiff has not stated how long she was personally exposed to the allegedly unlawful conditions, and she has not asserted what harm she sustained from such conditions. See *Casey-El v. Greenwell*, No. 1:05-CV-104-FRB, 2005 WL 2298199, at *4 (E.D. Mo. Sept. 21, 2005) (conditions of confinement claim dismissed because plaintiff did "not allege that any of the defendants, with deliberate indifference, exposed [him] to levels of mold that posed an unreasonable risk of serious damage to [his] future health" or state plaintiff was "injured as the result of exposure to mold or spiders"). Plaintiff's allegations are vague, and without any allegations of harm, they fail to state a claim under § 1983.

Plaintiff alleges defendant Patrick "punished [her] for expressing [her]self to another inmate." She also alleges she is "continuously punished for defending [her] rights as well as verbally harassed and discriminated against due to [her] gender." These allegation are conclusory and do not state a claim. Plaintiff fails to assert any facts describing the manner in which she was punished or how it caused her injury. *See Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981) ("a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts"). Therefore, these claim must be dismissed.

Lastly, plaintiff alleges defendant Lee reports to work "impaired off marijuana which affects her ability to do her job." This claim fails to rise to the level of a constitutional violation. To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) the action occurred "under color of law" and (2) the action is a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Plaintiff's complaint regarding Lee's alleged substance abuse fails to state a deprivation of either a constitutional or

23

federal statutory right.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall not issue process or cause process to

issue upon the second amended complaint because it fails to state a claim upon which relief can

be granted.

**IT IS FURTHER ORDERED** that this action is **DISMISSED without prejudice**

pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in

good faith.

A separate Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 29th   day of October, 2021.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE